United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 20, 2024

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 24-32646** |
| **GCPS HOLDINGS, LLC,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | **CHAPTER 11** |

## MEMORANDUM OPINION

The matter before the court is the Objection to Debtor's Subchapter V Designation (ECF No. 38) and the Response to Objection to Debtor's Subchapter V Designation (ECF No. 42). The hearing was held on November 13, 2024. After consideration, the Objection is overruled, and the debtor may continue under Subchapter V of Chapter 11.

## BACKGROUND

The debtor, GCPS Holdings, LLC ("the debtor"), is a holding company for its subsidiary Global Composite Piping Solutions, LLC. It is also a Texas limited liability company. The debtor holds patented piping technology which its subsidiary plans on using for future projects or jobs.

Debtor has invested significant sum of money to develop and perfect its pipe design and manufacturing process. However, the debtor has struggled to land a contract to sell its pipe. It has made several attempts but has fallen short due to the Covid-19 Pandemic and geopolitical conflict. Despite failing to secure a contract, the debtor has raised roughly $4,000,000.00 in capital funds. The capital was raised by issuing long term secured convertible notes and bridge loans.

On June 4, 2024, Derrick Jones, Mark Tawney, and William Kutsche ("petitioning creditors") involuntarily forced the debtor into bankruptcy.[1]

On July 17, 2024, the debtor consent to an entry of Order for Relief in the Chapter 11 Case.[2] Additionally, elected to proceed under Subchapter-V of Chapter 11. The Court granted an Order on the Entry of Order for Relief shortly afterwards.[3]

On September 25, 2024, petitioning creditors filed an Objection to Debtor's Subchapter V Designation.[4] They argued the debtor has never engaged in any commercial or business activities because the debtor had only raised capital and never generated any business. Thus, the petitioning creditors claim the debtor is not eligible for Subchapter V designation. If the objection is

---

[1] ECF No. 1.
[2] ECF N0. 10.
[3] ECF No. 13.
[4] ECF No. 38.

successful, the debtor would revert to a non-Sub V Chapter 11 potentially allow the filling of a competing plan of reorganization.  The petitioning creditors have indicated a desire to file a competing plan of reorganization.

Debtor's response filed on November 16, 2024, argues that the petitioning creditors are adding an additional non-statutory element for Subchapter V qualification by requiring that a Subchapter V debtor generate income, which this debtor has not accomplished.

After the hearing on November 13, 2024, the legal and factual issue is whether the debtor's actions amount to "commercial or business activities" at the petition date as required for a Subchapter V designation.

This is an involuntary chapter 11 bankruptcy.  "In an involuntary chapter 11 case, the debtor shall file within 14 days after entry of the order for relief a statement as to whether the debtor is a small business debtor and, if so, whether the debtor elects of have Subchapter V of Chapter 11 apply."[5]   Here, the debtor consented to an entry of an order for relief and requested to be redesignated under Subchapter V of Chapter 11.[6]  The request was granted shortly after.[7]

To qualify for subchapter V of Chapter 11 a debtor must (1) be a "person" under the bankruptcy code; (2) be a "small business debtor;" (3) not have aggregate debt exceeding $7,500,00 on the petition date; (4) at least 50 percent of the debtor's debt arose from commercial or business activities.[8]  Here, the only element at issues is whether the debtor qualifies as a "small business debtor."

The Bankruptcy Code defines small business debtor as "a person engaged in commercial or business activities that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition."[9]  The code does not provide a definition for "commercial or business activity."  Since there is not a provided definition, Courts have endeavored to define "commercial or business activity."

## LEGAL ANALYSIS

When determining whether a debtor has been engaged in a "commercial or business activity," this Court will employ a "totality of the circumstances approach.[10]"

The case cited by both parties, coming from the Southern District of Texas, is *In re Port Arthur Steam*.  In that case, the Court dealt with a similar issue.  Creditors were objecting to the Subchapter V designation of a debtor because the debtor was not engaged in "commercial or business activities" because the debtor was "winding down" and not performing its previous functions as a

---

[5] FRBP Rule 1020(a).
[6] ECF No. 10.
[7] ECF No. 13.
[8] *See* 11 U.S.C. § 1182(1)(A); *See also In re Offer Space*, 629 B.R. 299 (Bankr. D.Utah 2021).
[9] 11 U.S.C. 101(51D)(A).
[10] *In re Offer Space, LLC*, 629 B.R. 299, 306 (Bankr. D.Utah 2021) (quoting *In re Ikalowych*, 629 B.R.261 (Bankr. D. Colo. 2021).

2 / 4

business.  The Court used "Plain meaning" to define "commercial or business activities."[11]  It defined activities as,

> "Commercial means 'of or relating to commerce' and 'viewed with regard to profit.' Commerce means 'the exchange or buying and selling of commodities on a large-scale involving transportation from place to place.' Business means 'a usually commercial or mercantile activity engaged in as a means of livelihood,' or 'dealings or transactions especially of an economic nature.' Finally, "activity" means "the quality or state of being active: behavior or actions of a particular kind."

The Court concluded that being "managed by two principals of its limited partner under a management agreement," "litigating" a lawsuit, pursuing collection of accounts receivables, "actively maintained its facility and vehicles," attempts to sell assets by "prepar[ing] photographs and specifications information for potential buyers," selling assets, and filing tax returns and reports all constituted "commercial or business activities."[12]  Several other Courts have echoed similar stances.[13]

When determining whether a debtor has been engaged in a "commercial or business activity," "the Court will employ a 'totality of the circumstances approach.[14]'"

Here, similarly to *In re Port Arthur Steam*, the debtor's Chief Operating Officer, Terry Shafer, testified at the hearing to actions by the debtor satisfying the "commercial and business activities" Definition.  Those actions include (1) having a lease and maintaining a facility in Conroe, Texas; (2) maintaining bank accounts at Chase Bank; (3) continued attempts to generate business in Argentina; (4) Providing marketing materials for potential investors; (5) employing attorneys to protect intellectual property rights and business-related matters.  Despite being labeled as a "startup," the debtor has made significant actions which are analogous to the debtor in *In re Port Arthur Steam*.  Thus, meeting the definition of "commercial or business activities."

The petitioning creditors overstate the facts supporting their argument.  In their Objection, petitioning creditors stated "the debtor has not 'engaged in' any business. There *never has* been a business, no 'commercial or business activities' have ever taken place such…"[15]  Petitioning creditor do not sufficiently rebut Mr. Shafer's testimony to show the debtor was never a business. Petitioning creditors continue to insist that because the debtor never entered into a contract, it was never engaged in commercial or business activities.  This argument seems to also conflate business operations with business activities.  These definitions were distinguished in the *In re offer Space* case.

---

[11] *In re Port Arthur Steam Energy,* 629 B.R. 233, 236 (S.D.Tx.  2021).

[12] *Id.* at 236-37.

[13] *See In re Robinson*, 2023 WL 2975630 (Bankr. S.D. Miss. 2023); *In re Fama-Chiarizia*, 655 B.R. 48 (Bankr. E.D.N.Y. 2023).  *In re RS Air, LLC,* 638 B.R. 403, 409 (9th Cir. BAP 2022).

[14]  *In re Offer Space, LLC*, 629 B.R. 299, 306 (Bankr. D.Utah 2021) (quoting *In re Ikalowych*, 629 B.R.261 (Bankr. D. Colo. 2021).

[15] ECF No. 38 at 4.

The Court in *In re Offer Space* held "The term 'operation' is defined as 'the quality or state of being functional or operative.' Thus, had Congress utilized the term 'operations' in lieu of 'activities' in defining a debtor under Subchapter V, the Court would be constrained to sustain the U.S. Trustee's objection given that the Debtor's business was no longer functional or operational on the Petition Date.[16]"

Here, if "operation" was required for Subchapter-V designation, then the Court would be more likely to sustain the petitioning creditor's objection because of the debtor's struggle to generate income and not being functional or operative by producing its patented pipe. However, the term "activities" provides a broader definition, allowing for the debtor's actions to qualify it for Subchapter-V designation.

## CONCLUSION

Overall, the debtor does qualify for Subchapter V designation because it satisfies the requirement of being a "small business debtor." The debtor was engaged in "commercial or business activities" in the form of (1) having a lease and maintaining a facility in Conroe, Texas; (2) maintaining bank accounts at Chase Bank; (3) continued attempts to generate business in Argentina; (4) Providing marketing materials for potential investors; (5) employing attorneys to protect intellectual property rights and business-related matters.

**THEREFORE, IT IS ORDERED** that the Objection to Debtor's Subchapter V Designation (ECF No. 38) is overruled.

SIGNED 11/20/2024

Jeffrey Norman
United States Bankruptcy Judge

---

[16] *In re Offer Space, LLC*, 629 B.R. 299, 306 (Bankr. D.Utah 2021).

4 / 4